Pee Cueiam.
 

 The bill states, that upwards of twenty years ago the complainant intermarried with a certain John M’Elhatton, of the county of Granger; that not long after the intermarriage they moved to the State of Georgia; that her husband turned out to be a man of a very dissipated character, addicted to habits of ebriety and lewdness, regardless of her happiness and the obligations of the married state ; that this conduct produced a state of want, and a total disability in her husband of supporting the family, notwithstanding all the effects of her industry to the contrary; so that, after cohabiting with him for sixteen years, the united pressure of intolerable ill-treatment, and the absence of the common necessaries of life, forced her to return to Granger, and seek the protection of her father, John Coalter, still then living; that after her return to her father, who received her, she filed her petition for a divorce, which is still pending ; that in the year 1811, her father, the said John Coalter, departed this life intestate, leaving a considerable real and personal estate to be divided amongst his children, to a share of which she was entitled; that upon the petition of some of the heirs, the real estate was divided, and the part of the complainant laid off, of which she became possessed; that the amount of the personal estate, after satisfying all demands, which remained to be distributed, in the hands of the defendants, Gabriel M’Craw and Jane Coalter, administrator and administratrix, was $2,982.59 ; that her said husband, hearing that a considerable real and personal estate had fallen to her by the death and intestacy of her father, returned into Granger, and sold and assigned his interest in the same, before division and without having reduced any part thereof into his possession, unto the defendant, John Alfred, who sold and assigned the same unto the defendant, Henry Howell; that the said Howell caused an ejectment to be brought for the part of the land in her possession, the declaration to be served on her tenant without her
 
 *279
 
 * notice, and by fraud and confederacy obtained judgment by default, and the complainant to be turned out of possession ; that said Howell caused a petition for her share of the personal estate to be filed in the name of her husband alone, in the said court of Granger County, with an assignment of his interest in what might be recovered by the attorney on the record. The administrators, respecting the equity of the complainant, claimed to hold as her trustees, and on this ground resisted the claim of the petition, which was not sustained by the court, but the matter of the petition decreed to the petitioner, which upon appeal to the Circuit Court was confirmed, but the decree suspended for 60 days to give time for an application to this court. The answer of John Alfred states he married the daughter, being the only child, of the complainant and the said John M’Elhatton ; that after the death of the complainant’s father, she applied to him to go to the State of Virginia, where she said she understood the said John then was, and purchase from him his right of the property accruing by her father’s death, for the benefit of her daughter, the respondent’s wife ; that he accordingly went there, but the said John was not to' be found; that some time afterwards said John returned, and applied to this defendant to sell his interest in said property to him, for the benefit of his daughter, which he consented to do, having first obtained the consent of the complainant, who recommended the measure; that he gave the said John, his father-in-law, $200 for the same. He further states that he was much surprised at finding soon afterwards that the complainant was very angry because he had made said purchase, and to give satisfaction, he offered to her the use of the whole during her life, or he would take the whole and maintain during life, or that she might take her choice of either the real or personal estate, and he would take the other; all which propositions she rejected. Finding he could not give satisfaction, * and not willing to involve himself in litigation with his mother-in-law, he concluded to relinquish his right therein to any person willing to take the same, and finding the defendant, John Howell, willing, he transferred to him for the consideration of $700; and he submitted whether, as the complainant’s assent was freely given to his purchase, the same can now be canceled by this court. The answer of the defendant, Howell, states that he admits the intermarriage of
 
 *280
 
 tlie complainant and the said M’Elhatton, their removal to the State of Georgia, and their separation, but the cause he is ignorant of; believes it was, however, her fault, for he always understood the said M’Elhatton provided plentifully for his family; admits that the complainant’s father died intestate, leaving the property in the bill mentioned, and that the complainant is one of the heirs at law and distributee under the statute. He further states that the defendant, Alfred, at the complainant’s request, as he is informed and believes, purchased the right and title to the said share from the said John M’Elhatton, who, as he is also informed, before the said sale by him, offered to the complainant that if she would return and live with him, she should have the use and management of the said property, and that he would convey the same accordingly to any person for this purpose, upon condition to be void if she should again leave him, but the complainant refuses to have any connection with him; that he is informed and believes, that the defendant, Alfred, made the proposal to her stated in his answer; that after-wards, said Alfred proposed a sale of the same to this defendant, which took place at the ’price of. $700 ; that upon application to the defendant, M’Graw, the administrator, he was refused the share of the personalty, being informed by him that the complainant’s counsel had forbid the payment thereof. He admits that he brought an ejectment against Real, tenant in possession, and got judgment *by default, but denies it to have been done by combination with
 
 Real
 
 or any other person; and that he took a writ of possession, and became possessed by means thereof. He admits that he appeared as-agent for said John M’El-hatton, in defending the petition for a divorce. He admits filing a petition for the distributive share of said estate, and that the same is opposed by the administrators, for whose benefit he knows not, but he believes it to be for their own. He- admits the assignment in his favor by the attorney, who was empowered to do so by said John M’Elhatton ; that the said complainant was well acquainted with the fondness of her husband for spirituous liquors before the intermarriage, and with his character and disposition, &c.
 

 Upon these answers a motion was made to dissolve the injunction which had been granted in this cause; and it being a new case, the court requested it to be spoken to in behalf of the motion, .which the next day, upon its being called up, was declined by the counsel, and by them submitted without argument.
 

 
 *281
 
 It is not necessary to advert, upon the present question, to those unhappy circumstances which embittered the married state between these parties, and which are on the one side detailed in the bill, and on other brought forward by way of recrimination in the answer. They may, or perhaps some of them may, with propriety be taken into consideration upon the final hearing. At present the material charges are, that the complainant is a married woman, living apart from her husband by his default, without any support from him; that he is in a state of insolvency, having neither the means, nor the habits if he had the means, necessary to afford her a support; that in this state of things, a distributive share of her father’s estate hath accrued to her husband and her, in her right, which the husband, not having reduced into possession, hath for valuable consideration assigned over, * and that the assignee is endeavoring to obtain the possession of the whole thereof, without having settled any part to the separate use of the complainant. The rule of law is, with respect to such part of the wife’s personal estate as is not in her possession, to wit, debts owing to her, contingent interests, money owing to the wife, on account of intestacy, and the like, of such estate the marriage'is a qualified gift to the husband, that is, upon condition that he reduce them into possession during the coverture, which will be effected by' the receipt of the money himself, or by the hands of another person, properly authorized for this purpose. See Roper, 77, 78, cites Roll. Ab. 342, 350; Moore, 452. In equity, however, this interest and authority have been considerably modified, under particular circumstances. One of these modifications is, that although in a court of law the husband can compel the payment of the wife’s chose in action, &c., and cannot be prevented therefrom, yet if he is under the necessity of reverting to a court of equity to effectuate this, equity will not interfere unless he will submit to dispense equity before it is administered to him ; that is, it will not act on his behalf unless he submit to make a competent settlement upon the wife, when no settlement has been made. Rop. 93 2 P.
 
 W.
 
 641; 3 P. W. 12, 202. This is the wife’s equity; it is the guard of this court over her interest when she cannot protect herself, and has existed for a great length of time; and is not confined to those cases only where the husband seeks the assistance of this court, for it has restrained him from proceeding in the ecclesiastical court to obtain his wife’s portion, from
 
 *282
 
 the inability of the latter court to compel a settlement. Rep. 96; 2 Atk. 420, 514; 2 P. W. 641; 1 Ves. 538; 3 Br. Ch. 195. This last case is similar to the present. The County Court of Pleas and Quarter Sessions, by the act of 1762, ch. 5, § 23, is constituted the proper forum for the recovery * of legacies, filial portions, and distributive shares of intestate estates by petition, answer upon oath, &c., in manner and form of chancery proceedings. The ecclesiastical court in England has the same jurisdiction, but is incompetent to make a settlement on the wife upon a suit by the husband for the wife’s property. So is the Court of Pleas and Quarter Sessions in this State, under the act of Assembly. By a parity of reason, as a court of equity in England will interfere upon such a case as the present, and prevent the husband from reducing into his possession the distributive share of the wife until a competent settlement be made by him under the direction of that court, so here in this State, it being conceived that the wife has the same equity as in England, and there this equity is in such case interposed as a guard for her protection, it seems to follow, necessarily, that this court has the power needful to render its jurisdiction effectual, and that by it the County Court may be restrained from proceeding, in such a case as the present, until a settlement is made in the wife, or the property is investigated here. The answers here brought forward two other grounds of defense, which seem to be relied on to rebut this equity of the wife ; the first is, that the husband received a valuable consideration for his interest; the second, that the complainant assented to his assignment of it. With regard to the first, the authorities are numerous and express, that the assignment by the husband for a valuable consideration bars not this equity of the wife. There is this case in the books. At law the husband cannot support an action against executors for a legacy due to the wife. Why ? because it would totally defeat this equity of the wife. It "would then be whimsical, says the book, that the as-signee in equity should be in a better situation than the husband himself is in at law; and that the husband, not being entitled at law, should by assignment to another * for valuable consideration, entitle that person in equity. The husband cannot by this assignment, or any other means, deprive her of this equity. See Roper, 97, 98; 3 P. W. 199; 2 Atk. 207, 549; 1 Bro. Ch. 44, 51. Every reason applicable to the case of a legacy, is equally ap
 
 *283
 
 plicable to the case of a distributive share. More especially when this accession has fallen due after a separation has taken place between the husband and wife. 2 Ves. junior, 191.
 

 As to the other ground, that the complainant hath assented to the assignment by the husband, it is not conceived that this Araries the case in the least. The general rule of law is, that the husband cannot covenant with or grant anything to the wife. This is a natural consequence of union of person, for the grant would suppose a separate existence, and a covenant amounts only to a covenant with himself. Roper, 204, and the cases there cited. One reason of the law and of its policy is to prevent the regard the wife is supposed to have for the husband from stripping her of all her property during the marriage. Therefore she is not admitted to make any contract, nor, of course, to give her assent, which amounts to the same, unless she acts in a representative character; then in some cases she may, when the reason of the rule which is for her protection does not forbid it. A strong evidence of the force and extent of this protection is her incapability of being sued at law as a
 
 feme
 
 sole, which necessarily presumes her incapacity of contracting. The exceptions to the rule of the cases of exile, abjuration, and divorce, result from necessity, and add strength to its principle, by excluding the possibility of the power, influence, or coercion of the husband in these cases. Another exception, it is true, was attempted to be introduced in the case of Corbet and Poelnitz, 1 Term, 5, where the wife lives apart from her husband by deed of articles * of separation, by which she has a provision independent of him ; but this decision was overruled by the case of Marshall and Rutton, 8 T. 545. From this almost universal rule of law, considering her incapable of giving her assent to a contract by which she could be sued or her interest barred, it would be strange indeed that equity would take hold of what the law rejects, and admit a responsibility that would destroy the equity it had itself created. It is therefore established in equity, that any extra-judicial agreement entered into between husband and wife, relative to her property, will be of no
 
 effect;
 
 R.
 
 93;
 
 4 Ves. junior, 15 : that to bind the wife by her consent to the husband’s receiving her property must be in court, or before proper commissioners for the purpose, or even in the case of her assent to an arrangement respecting her separate property with
 
 *284
 
 her husband by deed, that it will not be established without her actual presence in court. 2 Yes. junior, 600.
 

 See
 
 Dearin
 
 v.
 
 Fitzpatrick,
 
 Meigs, 551;
 
 Smith
 
 v. Greer, 3 Hum. 118;
 
 Coppedge
 
 v.
 
 Threadgill,
 
 3 Sneed, 577;
 
 Wilks
 
 v.
 
 Fitzpatrick,
 
 Hum. 54;
 
 Scott v. Hix,
 
 2 Sneed, 192;
 
 Farnsworth
 
 v.
 
 Lemons,
 
 11 Hum. 140;
 
 Phillips
 
 v.
 
 Hassell,
 
 10 Hum. 197; King’s Digest, 3971, 7200.